IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHARISSE ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:14-CV-706-WKW |
| | )           [WO] |
| HOUSING AUTHORITY OF THE | ) |
| CITY OF AUBURN, ALABAMA; | ) |
| LEE EASTMAN, in his official | ) |
| Capacity as Executive Director | ) |
| of the Housing Authority; STAR | ) |
| PASCHAL, in her official capacity as | ) |
| Director of the Section 8 program for | ) |
| the Housing Authority of the City | ) |
| of Auburn, Alabama, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss the Amended Complaint (Doc. # 17) pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that the two-year statute of limitations bars Plaintiff's claims under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601–31 ("FHA"). Plaintiff filed a response in opposition to the motion (Doc. # 20) to which Defendants submitted a reply (Doc. # 21). A round of supplemental briefing followed. (Docs. # 22, 27.)

After careful consideration, the court finds that the motion to dismiss is due to be granted.

## I. JURISDICTION AND VENUE

Subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(6), "it is generally true that the 'scope of the review must be limited to the four corners of the complaint.'" *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir.

2002)). However, a court also can consider "an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Id.*; *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

Finally, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted). When the time bar is apparent from the face of the complaint, "the burden of alleging facts which would give rise to the tolling [of] the limitations period falls upon the plaintiff." *Parrish v. City of Opp, Ala.*, 898 F. Supp. 839, 841 (M.D. Ala. 1995).

### III. BACKGROUND

For a number of years, Plaintiff Charisse Allen received rent subsidies under Section 8, a housing-subsidy program that provides financial aid for "low-income families." 42 U.S.C. § 1437f(a). This action arises from Plaintiff's participation in that program, the discrimination she allegedly endured in connection with her request to transfer from one housing authority to another, and the termination of her Section 8 benefits.

A.    **The Section 8 Housing-Subsidy Program**

The Department of Housing and Urban Development ("HUD") funds the Section 8 program, but the administration of the program falls on local housing authorities, which "enter into annual contributing contracts with [HUD]." (Am. Compl. ¶ 9); *see also* 24 C.F.R. § 982.51. Under these contracts, "subsidies compensate landlords for the difference between the rent [that] tenants can afford and market rental rate." (Am. Compl. ¶ 9); *see also* 24 C.F.R. § 982.451. Within specified guidelines, a Section 8 participant can request a transfer (called a "port") from one housing authority to another. (Am. Compl. ¶ 10); *see also* 24 C.F.R. § 982.353 (discussing portability).

B.    **Ms. Allen's Port Request and HUD Complaint**

In June 2010, while a tenant at the Tuskegee Housing Authority ("THA") in Tuskegee, Alabama, Ms. Allen "began the process of requesting a port" from the THA to the Auburn Housing Authority ("AHA") in Auburn, Alabama. (Am. Compl. ¶ 10.) In connection with her port request, Ms. Allen asked for a two-bedroom unit to accommodate her physical and mental disabilities.[1] By November 2010, the AHA had not approved her port request, but on November 5,

---

[1] Ms. Allen alleges that, during this time frame, she "was involved in cardiac rehabilitation" and had diagnoses of "generalized anxiety disorder," "obsessive compulsive disorder with severe agoraphobia," "microphobia," "mysophobia," and "anxiety related phobias." (Am. Compl. ¶ 1.)

2010, Defendant Lee Eastman, AHA's executive director, acknowledged that he had received her request for a two-bedroom unit.[2]  (Am. Compl. ¶ 14.)  Her port request still was pending in December 2010, at which time the AHA claimed that it had not, when it had in fact, received her request for the transfer and a two-bedroom unit.

In January 2011, believing that the AHA's delay in approving her port request was the result of its discriminatory practices in violation of the FHA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, Ms. Allen filed a complaint against the AHA with HUD ("HUD Complaint").  In a letter dated January 24, 2011, HUD notified the AHA of Ms. Allen's HUD Complaint and explained the investigatory procedure it would employ to assess the merits of the complaint.

On March 1, 2011, while her HUD Complaint was pending and after resubmission of various forms to the AHA (including a "special-needs accommodation form"), Ms. Allen received the transfer approval she sought.  She moved into her unit at the AHA on the same date.  She did not sign the lease agreement at that time, however, because she disputed the rental payment calculation on grounds that it did not deduct certain medical expenses.  Between March 1, 2011, and March 30, 2011, the AHA made repeated demands – by

---

[2] On November 29, 2010, the THA acceded to Ms. Allen's request for a two-bedroom unit, but the AHA "refused to acknowledge" THA's decision and demanded Ms. Allen "to begin the request for accommodation process all over."  (Am. Compl. ¶ 16.)

telephone calls and letters – that she sign the lease agreement, but Ms. Allen continued to refuse based upon her belief that the rent calculation was wrong.

Ultimately, Ms. Allen received a letter in late March 2011, directing her to attend a meeting at the AHA on April 13, 2011, and to bring documentation to substantiate her claimed medical expenses. At the meeting, though, the AHA representative declined to consider Ms. Allen's medical expenses and demanded that Ms. Allen sign the lease. Ms. Allen again refused. Less than a week later, on April 18, 2011, Defendant Star Paschal, the AHA's Section 8 Director, mailed Ms. Allen a Notice of Termination of Assistance. The notice informed Ms. Allen that her Section 8 assistance payments would be terminated based upon her failure to sign required forms and for engaging in threatening behavior toward AHA personnel.[3] (Am. Compl. ¶ 38; Notice of Termination of Assistance Letter (Doc. # 7-1).)

With respect to Ms. Allen's HUD Complaint, HUD issued a letter to Ms. Allen on April 29, 2011, explaining that it had completed its investigation and that, "[b]ased on the evidence obtained during the investigation, . . . no reasonable cause exist[ed] to believe that a discriminatory housing practice ha[d] occurred." (Apr. 29, 2011 HUD Letter, at 1 (Doc. # 17-2).) Accordingly, HUD informed Ms. Allen

---

[3] During the investigation of Ms. Allen's HUD Complaint against the AHA, Ms. Allen told a HUD investigator that "she was going to come to the [AHA] and lay her hands on Ms. Paschal and pop two in her," which Ms. Allen clarified meant that she was "going to shoot [Ms. Paschal] twice." (Doc. # 7-1, at 8.)

that her HUD Complaint was "hereby dismissed." (Apr. 29, 2011 HUD Letter, at 1 (emphasis omitted).) Ms. Allen alleges that, after receiving HUD's decision, she continued to pursue "administrative remedies through at least March 2013" (Am. Compl. ¶ 42), but her allegations do not elaborate upon the nature of those administrative remedies.

### C. This Lawsuit

Ms. Allen commenced this lawsuit on July 25, 2014. The original Complaint alleged claims under 42 U.S.C. § 1983 for violations of constitutional due process rights and under 42 U.S.C. §§ 1437–1437z-8, for violations of the United States Housing Act. Defendants moved to dismiss the Complaint on grounds that § 1437 does not provide a private cause of action and that the two-year statute of limitations barred the § 1983 claims. Rather than respond to Defendants' motion to dismiss, Ms. Allen amended her Complaint.[4]

The operative Amended Complaint brings a single count alleging violations of the FHA, specifically, 42 U.S.C. § 3604. Ms. Allen alleges that Defendants discriminated against her "because of her disability of mental illness" and by refusing to make numerous "reasonable accommodations to their policies, practices, and procedures." (Am. Compl. ¶¶ 47–48.) Ms. Allen contends, among other

---

[4] Based upon the filing of Ms. Allen's Amended Complaint, the court denied Defendants' motion to dismiss as moot.

7

things, that Defendants failed to approve in a timely manner her request for a two-bedroom apartment to accommodate her "cardiac rehabilitation," denied her "the equal opportunity to use and enjoy the dwelling," and failed to accommodate her agoraphobia. (Am. Compl. ¶ 47.) The Amended Complaint demands compensatory damages, punitive damages, and injunctive relief.

Defendants filed a motion to dismiss the Amended Complaint under Rule 12(b)(6) on grounds that Ms. Allen commenced this FHA action outside the applicable two-year statute of limitations. That motion is ripe for ruling.

## IV.  DISCUSSION

The FHA declares it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." § 3604(f)(1)(A). Discrimination covered under § 3604(f) includes a "refus[al] to make reasonable accommodations when necessary to afford the person equal opportunity to use and enjoy a dwelling." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) (citing § 3604(f)(3)(B)). The FHA permits an "aggrieved person" to bring a civil action in a federal district court "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice . . . ." § 3613(a)(1)(A). Section 3613 also contains a tolling provision, which is at the

8

center of the present dispute. It provides that the computation of the two-year statute of limitations "shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." § 3613(a)(1)(B).

Defendants contend that their decision to terminate Ms. Allen's Section 8 benefits is the last alleged "discriminatory housing practice" and that this decision occurred on April 18, 2011, the date on the AHA's Notice of Termination of Assistance. They argue that, because Ms. Allen did not commence this action until more than three years later on July 25, 2014, the two-year statute of limitations bars this action. In response, Ms. Allen does not seriously quibble with April 18, 2011, as the "occurrence" date for purposes of § 3613(a)(1)(A), other than to suggest that the "occurrence" date should be adjusted to account for the fact that she did not receive the notice until August 24, 2011. When measured against the July 25, 2014 filing date of this lawsuit, however, August 24, 2011, is no more a timely date than is April 18, 2011. Hence, Ms. Allen must rely on § 3613(a)(1)(B)'s tolling provision to save her suit from the FHA's two-year statute of limitations.[5]

---

[5] It is assumed, without deciding, that Ms. Allen's FHA claim, asserted for the first time in the Amended Complaint, relates back to the original filing date of the Complaint. *See* Fed. R. Civ. P. 15(c).

An administrative proceeding that meets § 3613(a)(1)(B)'s requirements will toll the running of the statute of limitations during the proceeding's pendency. Ms. Allen argues that her HUD Complaint meets the requirements and that its pendency tolled the FHA's statute of limitations for a sufficient period of time so as to bring this FHA action within the two-year window.

Ms. Allen filed her HUD Complaint in January 2011, alleging that Defendants had engaged in discriminatory housing practices in violation of the FHA, §§ 3601–19, and in disability discrimination in violation of Section 504 of the Rehabilitation of Act of 1973, 29 U.S.C. § 794.[6] There is no dispute that Ms. Allen's HUD Complaint – in that it included an alleged FHA violation under §§ 3601–19 – commenced an administrative proceeding "*under this subchapter . . . with respect to a complaint . . . under this subchapter.*" § 3613(a)(1)(B) (emphasis added). The parties vigorously dispute, however, when this administrative proceeding concluded.

To support her FHA tolling argument, Ms. Allen points to the Amended Complaint's allegation that she "was pursing administrative remedies [with HUD]

---

[6] The FHA's implementing regulations acknowledge that, "[i]n addition to the Fair Housing Act, other civil rights authorities may be applicable in a particular case," including "section 504 of the Rehabilitation Act of 1973." 24 C.F.R. § 103.5. "Thus, where a person charged with a discriminatory housing practice in a complaint filed under section 810 of the Fair Housing Act is also prohibited from engaging in similar practices under . . . section 504 of the Rehabilitation Act of 1973 . . . , the person may also be subject to action by HUD or other Federal agencies under the rules, regulations, and procedures prescribed under . . . section 504 (24 CFR part 8)." *Id.*

through at least March 2013." (Am. Compl. ¶ 46.) To substantiate her argument, Ms. Allen relies upon the letter, dated September 2, 2011, from HUD, informing her that her request for a review of HUD's Letter of Findings under Section 504 was pending. She also relies upon email correspondence from a HUD official, dated November 25, 2014, indicating that HUD was "unable to locate" documentation of its decision pertaining to her prior request for a review of the Letter of Findings and that, therefore, it would "re-review the case and issue a formal letter of determination as expeditiously as possible."[7] (Nov. 25, 2014 email (Doc. # 22-1).)

The flaw in Ms. Allen's argument is that it relies upon Section 504 to invoke the FHA's tolling provision. The September 2, 2011 HUD letter provided that 24 C.F.R. § 8.56 would govern Ms. Allen's requested review. Section 8.56(h) is not part of the FHA's implementing regulations; rather, it falls within the regulations implementing Section 504. *See* 24 C.F.R. § 8.1 (explaining that the purpose of Part 8, which includes § 8.56, "is to effectuate section 504 of the Rehabilitation Act . . ."); *see also id.* § 8.56 (setting forth the administrative scheme for conducting investigations under Section 504, including the preparation of a letter of findings). The FHA, in turn, has its own administrative scheme through which HUD

---

[7] Absent objections from the parties, the court has considered Ms. Allen's exhibits, as well as Defendants' exhibits, on Rule 12(b)(6) review. The extrinsic exhibits are central to Ms. Allen's contention that she avoids the FHA's statute-of-limitations bar based upon her continued pursuit of "administrative remedies through at least March 2013" (Am. Compl. ¶ 42). *See Speaker*, 623 F.3d at 1379.

administers complaints. *See* 42 U.S.C. § 3610; 24 C.F.R. Part 103. The FHA's administrative process begins when an "aggrieved person" files a complaint with the Secretary of HUD alleging a discriminatory housing practice. § 3610(a)(1)(A)(i). The Secretary then serves the complaint on respondents, "make[s] an investigation of the alleged discriminatory housing practice[,] and complete[s] such investigation within 100 days after the filing of the complaint." *Id.* § 3610(a)(1)(B). At the conclusion of the investigation, the Secretary "determine[s] based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur" and, if so, "issue[s] a charge on behalf of the aggrieved person" or, if not, "dismiss[es] the complaint." *Id.* § 3610(g); *see also* 24 C.F.R. § 103.400 (setting forth the procedures established by HUD when the determination is that "no reasonable cause exists"). Notably, neither the FHA nor its implementing regulations establish an internal review process for a HUD Complaint that is dismissed based upon a finding of no reasonable cause, as was Ms. Allen's HUD Complaint. *See generally* § 3610; 24 C.F.R. Part 103.

The court is aware of no authority, and none has been cited, demonstrating that the pendency of an administrative proceeding with respect to a complainant's alleged violation of Section 504 tolls the running of the limitations period under the FHA. The plain language of the FHA does not support this tolling contention. The FHA's tolling provision applies only when "an administrative proceeding *under*

*this subchapter* [is] pending with respect to a complaint or charge *under this subchapter* based upon such discriminatory housing practice." § 3613(a)(1)(B) (emphases added). "This subchapter," as referenced in § 3613(a)(1)(B), is Subchapter I to Chapter 45 of the FHA and encompasses §§ 3601–19. Additionally, the Eleventh Circuit has observed that "the FHA's tolling provision expressly limits its reach to administrative proceedings concerning discriminatory housing practices made unlawful by the Act itself." *Hunt v. Ga. Dep't of Cmty. Affairs*, 490 F. App'x 196, 198 (11th Cir. 2012) (citing §§ 3602(f), 3613(a)(1)(A), (B)); *cf. Kennedy v. Zanesville*, 505 F. Supp. 2d 456, 488 n.17 (S.D. Ohio 2007) (noting that an administrative proceeding under § 3610 is "for FHA claims only[,] not . . . for all claims" and finding that, although plaintiffs had filed a charge with the Ohio Civil Rights Commission, "there [was] no evidence that [p]laintiffs filed a section 3610 proceeding with HUD, [and thus] tolling [was] not available"). Based upon this authority, the administrative proceeding with respect to Ms. Allen's HUD Complaint alleging that the AHA discriminated against her based on her disability in violation of Section 504 is not a proceeding with respect to an FHA claim alleging a violation of §§ 3610–19; therefore, the FHA's two-year statute of limitations does not exclude the time during which Ms. Allen's Section 504 administrative proceeding was pending.

As further support for her tolling argument, though, Ms. Allen points out that the case number referenced in HUD's September 2, 2011 letter is the case number assigned to her HUD Complaint. Ms. Allen is correct in that she brought a single HUD Complaint, but that HUD Complaint alleged violations of both the FHA and Section 504 and, thus, as explained, invoked two statutory mechanisms of review. *See also supra* note 6 (noting HUD's authority to investigate Section 504 complaints).

In sum, the administrative review process referenced in HUD's September 2, 2011 letter is not an "administrative proceeding under this subchapter" within the meaning of § 3613(a)(1)(B) and did not toll the FHA's two-year statute of limitations. Rather, for purposes of § 3613(a)(1)(B), Ms. Allen's administrative proceeding under the FHA concluded in April 2011, when HUD "completed its administrative processing of [her] complaint under the Act" and "dismissed" her complaint. (Doc. # 20-1.) Ms. Allen delayed filing this lawsuit until July 2014 – more than a year too late to support an FHA claim. Accordingly, it is apparent from the Amended Complaint and Rule 12(b)(6) documents that § 3613(a)(1)(B)'s tolling provision does not save Ms. Allen's FHA action from the two-year time bar.

## V. CONCLUSION

The FHA's two-year statute of limitations bars this action. Accordingly, it is ORDERED that Defendants' Motion to Dismiss the Amended Complaint (Doc. # 17) is GRANTED and that this action is DISMISSED with prejudice.

A final judgment will be entered separately.

DONE this 27th of February, 2015.

                                        /s/ W. Keith Watkins
                              CHIEF UNITED STATES DISTRICT JUDGE